UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-CV-81389-EA

ELISENA PHILEMOND,

        Plaintiff,

vs.

BOCA LAKES CONDOMINIUM
ASSOCIATION, INC., *et al*,

        Defendants.

_____/

## <u>REPORT AND RECOMMENDATION ON</u><br><u>MOTIONS TO DISMISS [ECF No. 7, 20]</u>

Defendants Boca Lakes Condominium Association, Inc. ("Boca Lakes") and

Phoenix Management Services, Inc. ("Phoenix"), (together, "Defendants") each filed a

Motion to Dismiss (together, "Motions") the Complaint filed by Plaintiff Elisena

Philemond for sexual harassment that occurred at her workplace. ECF Nos. 7, 20. On

April 15, 2026, Judge Artau referred the Motions to me for a Report and

Recommendation. ECF No. 21. I have reviewed Phoenix's Motion to Dismiss (ECF

No. 7), Ms. Philemond's Response (ECF No. 8), and Phoenix's Reply (ECF No. 11);

and Boca Lakes' Motion to Dismiss (ECF No. 20), Ms. Philemond's Response (ECF

No. 26), and Boca Lakes' Reply (ECF No. 27). This matter is ripe for decision. For the

reasons stated herein, I recommend that Phoenix's Motion to Dismiss be **GRANTED**

in part and **DENIED** in part; and Boca Lakes' Motion to Dismiss be **GRANTED**.

## I.        PROCEDURAL HISTORY

On November 9, 2025, Ms. Philemond filed a Complaint against Defendants. ECF No. 1. The Complaint pleads the following counts: sexual harassment through a hostile work environment under federal law (count 1); *quid pro quo* sexual harassment under federal law (count 2); retaliation under federal law (count 3); constructive discharge under federal law (count 4); sexual harassment under Florida law[1] (counts 5 and 6); retaliation under Florida law (count 7); negligent hiring, retention, and supervision under Florida law (count 8); and sexual assault and battery under Florida law (count 9). *Id.*

On January 29, 2026, Phoenix filed its Motion to Dismiss ("Phoenix Motion"). ECF No. 7. Ms. Philemond filed her response and Phoenix replied. ECF Nos. 8, 11. On April 10, 2026, Boca Lakes filed its Motion to Dismiss ("Boca Motion"). ECF No. 20. Ms. Philemond responded and Boca Lakes filed its reply. ECF Nos. 26, 27. The Motions were referred to me for a Report and Recommendation. ECF No. 21.

---

[1] Count 5 is for "SEXUAL HARASSMENT" as a "[v]iolation of [the] Civil Rights Act of 1992, Florida Statutes §§ 760.01 *et seq.*" whereas count 6 is for "SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT" as a "[v]iolation of [the] Civil Rights Act of 1992, Florida Statutes §§ 760.01 *et seq.*" Because of the lack of distinction between these claims and the similarities in the pleading requirements of some of the federal and state claims (as discussed more fully below), all counts will be referred to by the cause of action rather than the "count" that is pled.

II.    FACTS FROM THE COMPLAINT

Ms. Philemond is an adult woman from Haiti who was employed to perform janitorial duties at Boca Lakes, which is managed by Phoenix,[2] starting in February 2023. ECF No. 1 at 2, 5. Her supervisor was Joseph Vito, an employee of Phoenix. *Id.* ¶14.[3] Her duties included "the cleaning and maintenance of both the Phoenix Management office where Mr. Vito worked and specific apartments or units of the Boca Lakes Condominium." *Id.* ¶26.

While performing her duties, Mr. Vito subjected Ms. Philemond to sexual acts. *Id.* ¶28. Beginning in February 2023, Mr. Vito asked Ms. Philemond to give him a massage; she objected and clarified that she was hired to clean the property. *Id.* ¶30. During this interaction, Ms. Philemond said that it was inappropriate for her supervisor to make these remarks. *Id.* Mr. Vito responded that her predecessor had acquiesced to similar requests, and that he could adjust her hours. *Id.* ¶31. Similar interactions occurred on an "almost daily" basis throughout her employment. *Id.* ¶¶33, 34, 35, 36, 41, 43, 44.

---

[2] Phoenix is a property manager that oversees various properties, including Boca Lakes. *Id.* ¶¶3-4. "Boca Lakes, through its board of directors, maintained joint control of the actions of the Phoenix [ ] employees in the operation of the day-to-day activities of the Boca Lakes [ ], including hiring and firing decisions and compensation." *Id.* ¶18. Accordingly, Boca Lakes and Phoenix made decisions about Ms. Philemond's scope of employment and compensation. *Id.* ¶19.

[3] Ms. Philemond was not fluent in English. ECF No. 1 ¶15. Mr. Vito communicated with Ms. Philemond using the Google Translate application. *See id.* ¶49. Ms. Philemond captured screenshots of Mr. Vito's translations. *Id.* at 11-13.

Other interactions between Mr. Vito and Ms. Philemond included "inappropriate comments about [Ms. Philemond's] body, demanding massages and other sexual acts, subjecting her to unwanted and uninvited touching, disrobing and touching his groin area while looking at [Ms. Philemond], grabbing [Ms. Philemond's] breasts, and rubbing his erect penis" on her body. *Id.* ¶33. Ms. Philemond refused to engage in these acts and Mr. Vito responded with "punitive measures," which included restricting her ability to use equipment that ultimately required his presence for her to work. *Id.* ¶39, 47.

Mr. Vito also reminded Ms. Philemond that he was her supervisor and could fire her at any time. *Id.* ¶48, 52, 53, 55. Mr. Vito reinforced the narrative that Ms. Philemond could be fired by providing her with "fake" translated email communications from applicants who agreed to perform sexual acts in addition to housekeeping responsibilities. *Id.* ¶54.

Ms. Philemond "was forced to promise that she would comply with Mr. Vito's demands the following day or the following week, hoping Mr. Vito would forget or be too busy to ask her to perform the promised sex acts." *Id.* ¶51. Ms. Philemond reported Mr. Vito's actions to a contractor on the premises who spoke Haitian-Creole. *Id.* ¶50.

After further threats from Mr. Vito about using his supervisory authority to adversely impact Ms. Philemond's work if she did not acquiesce to his advances, Ms. Philemond's hours were eventually reduced. *Id.* ¶¶56-57.

In May or June 2023, Mr. Vito's verbal threats turned into threats of physical violence that caused Ms. Philemond to fear for her life. *Id.* ¶59. As a result, Ms.

4

Philemond resigned on June 12, 2023, and reported Mr. Vito's actions to the police. *Id.* ¶¶61-62. Subsequently, an officer interrogated Mr. Vito; during the interrogation, Mr. Vito stated that Ms. Philemond's predecessor agreed to perform massages and that any "accusations of sexual impropriety w[ere] a translation issue" with Ms. Philemond. *Id.* ¶¶63, 65, 67. Following the interview, Mr. Vito faced criminal charges in Florida's Fifteenth Judicial Circuit and he pled guilty. *Id.* ¶¶71, 74.

### III.   SHOTGUN PLEADING

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Complaints that violate Rule 8(a)(2) are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320, 1323 (11th Cir. 2015) (ruling that shotgun pleadings are "altogether unacceptable"). Shotgun pleadings violate Rule 8(a)(2), by "fail[ing] to one degree or another . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.") *Id.* at 1323. The Eleventh Circuit has identified four types of shotgun pleadings:

> The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that [is] replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the [complaint that] assert[s] multiple claims against multiple defendants without specifying which of the defendants are

responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1321-23.

## IV.   MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted if the plaintiff fails to state a claim for which relief can be granted.  According to the federal rules, a claimant must only state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pled factual allegations in the complaint, as well as all attachments thereto, and evaluates all plausible inferences derived from those facts in favor of the Plaintiff.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a plaintiff need not state in detail the facts upon which he bases his claim, Rule 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n. 3.  In other words, a plaintiff's pleading obligation requires "more than labels and conclusions." *Id.* at 555; *see also Pafumi v. Davidson*, No. 05–61679–CIV, 2007 WL 1729969, at *2 (S.D. Fla. June 14, 2007).

## V.   LEGAL PRINCIPLES

### A. *Employment Relationship*

A claim under the Civil Rights Act for workplace discrimination must be brought against an employer.[4] *Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016) ("A Title VII workplace discrimination claim can only be brought by an employee against his employer."). The term "employer" is construed liberally. *Id.* (citing *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359 (11th Cir. 1994)).

In making the determination of who is an employer, the core question is: "who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim," which requires "consideration of the totality of the employment relationship." *Id.* (citing *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999)). Factors to consider in making this determination include "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment." *Id.* (citations omitted).

Additionally, the Eleventh Circuit has "broadly recognized three circumstances when [aggregation of the employers] may be possible:"

> First, where two ostensibly separate entities are highly integrated with respect to ownership and operations, we may count them together under Title VII. This is the "single employer" or "integrated enterprise" test. Second, where two entities contract with each other for the performance

---

[4] "[T]he definition of employer in the [Florida Civil Rights Act ("FCRA")] is identical to the definition of employer in Title VII, FCRA cases are analyzed under the same framework as Title VII cases." *Monsanto v. Fleming*, No. 07-cv-405-J-33HTS, 2007 WL 3521724, at *4 (M.D. Fla. Nov. 15, 2007).

of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as "joint employers" and aggregate them. This is the "joint employer" test. Third, where an employer delegates sufficient control of some traditional rights over employees to a third party, we may treat the third party as an agent of the employer and aggregate the two when counting employees.

*Id.* at 1298 (citing *Lyles*, 166 F.3d at 1341).

### B. Sexual Harassment

"It shall be an unlawful employment practice for an employer— (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[5] 42 U.S.C. § 2000e-2(a)(1).

"Generally, sexual harassment claims are argued as either hostile work environment claims or quid pro quo claims." *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1200 n.3 (11th Cir. 2001) (emphasis in original). "The principal significance of the distinction is to instruct that Title VII is violated by either explicit or constructive alterations in the terms or conditions of employment and to explain [hostile work environment claims] must be severe or pervasive." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 752 (1998).

---

[5] "The Florida Civil Rights Act is modeled after Title VII, and thus, claims brought under it are analyzed by federal courts using the same framework." *Harkins v. Hillstone Rest. Grp., Inc.*, No. 24-23800, 2025 WL 522674, at *8 (S.D. Fla. Feb. 18, 2025).

*1.  Quid Pro Quo*

"*Quid pro quo* sexual harassment occurs when an employer alters an employee's job conditions as a result of the employee's refusal to submit to sexual demands." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *Henson v. City of Dundee*, 682 F.2d 897, 908 (11th Cir. 1982)); *Farley v. Am. Cast Iron Pipe Co.*, 115 F.3d 1548, 1552 (11th Cir. 1997).

> To establish a prima facie case, a plaintiff must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) that there is a basis for holding the employer liable.

*Pipkins*, 267 F.3d at 1999-1200 (citing *see Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000)).

"The standard for determining corporate liability due to a supervisor's sexual harassment depends on the type of sexual harassment that occurs. In a *quid pro quo* case, the corporate defendant is strictly liable for the supervisor's harassment." *Steele*, 867 F.2d at 1316 (citing *Henson*, 682 F.2d at 909-10) (emphasis in original); *Farley*, 115 F.3d at 1552. "When a supervisor requires sexual favors as *quid pro quo* for job benefits, the supervisor, by definition, acts as the company." *Id.* (emphasis in original); *Farley*, 115 F.3d at 1552 (citation omitted).

> In such a case, the supervisor relies upon his apparent or actual authority to extort sexual consideration from an employee. Therein lies the quid pro quo. In that case the supervisor uses the means furnished to him by the employer to accomplish the prohibited purpose. He acts

9

within the scope of his actual or apparent authority to "hire, fire, discipline or promote."

*Henson*, 682 F.2d at 910 (quoting *Miller v. Bank of Am.*, 600 F.2d 211, 213 (9th Cir. 1979)).

2.  Hostile Work Environment

"Hostile environment sexual harassment occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'" *Steele*, 867 F.2d at 1315 (citing *Vinson*, 477 U.S. at 65 (quoting 29 C.F.R. § 1604.11(a)(3) (1987)); *Henson*, 682 F.2d at 904); *Criswell v. Intellirisk Mgmt. Corp.*, 286 F.App'x 660, 662 (11th Cir. 2008) (per curiam) (citation omitted).

To establish a prima facie case, the plaintiff must show:

(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (citation omitted). "Corporate liability, therefore, exists only through *respondeat superior*; liability exists where the corporate defendant knew or should have known of the harassment and failed to take prompt remedial action against the supervisor." *Steele*, 867 F.2d at 1316 (emphasis in original); *Goodstein v. Gunther Motor Co.*, No. 95-6678, 1996 U.S. Dist. LEXIS 21968, at *31-32 (S.D. Fla. Sep. 12, 1996).

10

For a claim to be sufficiently severe or pervasive, the work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted). "In determining the objective severity of the harassment, courts consider '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Harkins*, 2025 WL 522674, at *5 (citation omitted).

### C. Retaliation

"Retaliation under Title VII occurs when an employee engages in protected activity, and suffers an adverse employment action that is causally related to that activity." *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 397 (11th Cir. 2012) (per curiam) (citing *see Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998)).

> To establish a prima facie claim for retaliation [ ], a plaintiff must show that: (1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an action from [her] employer that a reasonable employee would have found to be materially adverse; and (3) there is a causal link between the two events.

*Bothwell v. RMC Ewell, Inc.*, 278 F. App'x 948, 951-52 (11th Cir. 2008) (per curiam) (citing *Burlington N. & Sanfa Fe Ry. v. White*, 548 U.S. 53 (2005); *Sullivan v. AMTRAK*, 170 F.3d 1056, 1059 (11th Cir. 1999)); *see also Johannson v. Close Constr.*,

11

No.05-14361, 2006 U.S. Dist. LEXIS 115881, at *4 (S.D. Fla. Mar. 7, 2006) ("In order to state [a] claim of retaliation under Title VII and the FCRA . . .").

The first element protects "proceedings and activities which occur in conjunction with or after the filing of a formal charge." *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). For the second element, "a materially adverse action means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (citation and internal quotations omitted). "In terms of [the third element for] causation, a plaintiff must show that the decision-maker was aware of the protected conduct." *Uppal*, 482 F. App'x at 1388 (citing *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)).

### D. Constructive Discharge

"Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job." *Medearis v. CVS Pharm., Inc.*, 646 F. App'x 891, 898 (11th Cir. 2016) (per curiam) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (internal quotation marks omitted)).

"The standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Id.* (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001)); *Stancombe v. New Process Steel LP*, 652 F. App'x 729, 737 (11th Cir. 2016) ("Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim.")."In a sexual

12

harassment case based on a constructive discharge, in addition to the elements of sexual harassment, the employee must also show 'that the abusive working environment became so intolerable that her resignation qualified as a fitting response.'" *Kurtts v. Chiropractic Strategies Grp., Inc.*, 481 F. App'x 462, 465 (11th Cir. 2012) (per curiam) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004)); *Friedman v. Town of Pembroke Park*, No. 24-13916, 2025 WL 3627102, at *3 (11th Cir. Dec. 15, 2025) ("A constructive discharge requires 'pervasive conduct.'"). But, "constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation." *Stancombe*, 652 F. App'x at 737 (citation omitted).

### E. Negligent Hiring, Retention & Supervision

#### 1. Negligent Hiring or Retention

"The principal difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness." *McFee v. Carnival Corp.*, No. 19-22917, 2020 WL 13389094, at *5 (S.D. Fla. Feb. 3, 2020) (quoting *Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014)). "Negligent hiring occurs when, 'prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background.'" *Id.* (quoting *Mumford*, 7 F. Supp. 3d at 1249).

> To state a claim for negligent hiring or retention, a plaintiff must allege that: "(1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury."

*Doe v. NCL (Bahamas)*, No. 16-cv-23733, 2016 U.S. Dist. LEXIS 150817, at *8 (S.D. Fla. Oct. 27, 2016) (quoting *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1148 (S.D. Fla. 2016) (internal citations omitted)). "To satisfy the second element, a plaintiff *must* allege facts 'showing that the employer was put on notice of the *harmful propensities* of the [employee]' before either hiring or retaining the employee." *Id.* at *9 (quoting *Witover*, 161 F. Supp. 3d at 1148)) (emphasis in original).

"In negligent hiring or retention cases, the ultimate question of liability to be decided is 'whether it was reasonable for an employer to permit an employee to perform his job in light of information about the employee which employer should have known.'" *Gillis v. Sports Auth., Inc.*, 123 F. Supp. 2d 611, 617 (S.D. Fla. Apr. 24, 2000) (citation omitted).

> Only when an employer has somehow been responsible for bringing a third person into contact with an employee, whom the employer knows or should have known is predisposed to committing a wrong under circumstances that create an opportunity or enticement to commit such a wrong, should the law impose liability on the employer.

*Id.*

2.  Negligent Supervision

Generally, "[n]egligent supervision 'occurs when, during the course of employment, the employer becomes aware or should have become aware of problems

with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment.'" *NCL (Bahamas)*, 2016 U.S. Dist. LEXIS 150817, at *10 (quoting *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012)). The elements of a claim are "(1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." *Id.*

### F. Sexual Assault & Battery

"Under Florida law, [i]t is customary to refer to the term 'assault and battery' as if it were a legal unit, or a single concept; however, assault and battery are separate and distinct legal concepts." *Doe v. Epstein*, No. 08-80993, 2009 U.S. Dist. LEXIS 16490, at * 8-9 (S.D. Fla. Feb. 12, 2009).

By comparison, "assault [is] the beginning of an act which, if consummated, constitutes battery." *Id.* Specifically, "[a]ssault is defined as an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." *Id.* (citing *Lay v. Kremer*, 411 So.2d 1347, 1349 (Fla. 1st DCA 1982)). "A battery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Id.* at *9-10 (citing *Paul v. Holbrook*, 696 So.2d 1311, 1312 (Fla. 5th DCA 1997); *Sullivan v. Atl. Fed. Sav. & Loan Ass'n*, 454 So.2d 52, 54 (Fla. 4th DCA 1984), *review denied*, 461 So. 2d 116 (Fla. 1985)).

15

In the employment context, the question is often whether the sexual act was performed within the scope of employment. *See Hunter v. United States*, 825 F. App'x 699, 701-02 (11th Cir. 2020) (per curiam). "Florida courts have generally held sexual torts to be outside the scope of employment." *Id.* at 702. An exception exists where "the tortfeasor is 'assisted in accomplishing the tort by virtue of the employer/employee relationship.'" *Kiefer v. Endodontics, P.A.*, No. 23-cv-80404, 2023 WL 11956319, at *5 (S.D. Fla. July 17, 2023); *Yule v. Ocean Reed Cmty. Ass'n*, No. 19-10138-CIV, 2020 WL 2051505, at *7 (S.D. Fla. June 8, 2020).

"Whether an employee's acts are within the scope of employment is to be determined by the jury unless they could conceivably only reach one conclusion." *Blount v. Sterling Healthcare Grp.*, 934 F. Supp. 1365, 1372 (S.D. Fla. Apr. 19, 1996).

### G. Amending a Complaint

Under Federal Rule of Civil Procedure 15, when a party may no longer amend its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

When analyzing a request to file an amended complaint, "the proper method to request leave to amend is through filing a motion, and such motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F.App'x. 657, 665 (11th Cir. 2015) (per curiam). "The substance of the proposed amendment serves as the functional equivalent of a copy of the proposed amendment if it is

16

sufficient on its face to inform the Court of the proposal." *Newton v. Duke Energy Fla.*, 895 F.3d 1270, 1277-78 (11th Cir. 2018). "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999)). As a result, "[i]t has long been established in this Circuit that a district court does not abuse its discretion by denying a general and cursory request for leave to amend contained in an opposition brief." *Davidson v. Maraj*, 609 F.App'x. 994, 1002 (11th Cir. 2015) (per curiam).

But, when a complaint is dismissed because it is a shotgun pleading, the proper remedy is for the district court to *sua sponte* order repleading. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006).

## VI.    ANALYSIS FOR PHOENIX[6]

### A. *Employment Relationship*

Phoenix says that the claims for sexual harassment, retaliation, and constructive discharge should be dismissed because Ms. Philemond has not

---

[6] Phoenix and Boca Lakes do not make identical arguments why the Complaint should be dismissed. Boca Lakes argues only that the Complaint is a shotgun pleading; Phoenix argues it is both a shotgun pleading and that it fails to state a claim upon which relief can be granted. "Under the party presentation principle, American courts function in an 'adversarial system of adjudication' whereby 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (quoting *United States v. Sineneng-Smtih*, 590 U.S. 371, 375 (2020)). As a result, I address separately the arguments made by each party.

adequately pled that Phoenix was her employer. ECF No. 7 at 4. Specifically, Ms. Philemond has not addressed who recruited or hired her, who established her responsibilities and pay, or who created the position. *Id.* at 5. In response, Ms. Philemond says that Phoenix exercised sufficient control over her employment to be her employer. ECF No. 8 at 2.

Here, the Complaint alleges that Phoenix was "responsible for the day-to-day management of the Boca Lakes Condominium, including the management of employee and contractors who service the condominium." ECF No. 1 ¶17. Ms. Philemond was employed in the janitorial department of Boca Lakes, which was operated by Phoenix. *Id.* ¶16. Ms. Philemond's supervisor, Mr. Vito, was an employee of Phoenix "acting directly and/or indirectly in the interest of" Phoenix. *Id.* ¶14. Along with Boca Lakes, it "made decisions concerning [Ms. Philemond's] scope of employment and her compensation." *Id.* at ¶17. Specifically, Ms. Philemond submitted her worked hours to Phoenix, and Mr. Vito, her supervisor, verified the hours before "providing cash payment." *Id.* ¶¶16, 20, 21, 22. Mr. Vito also "directed [Ms. Philemond] in the completion of her day-to-day tasks." *Id.* ¶24.

Taking the Complaint in the light most favorable to Ms. Philemond, Phoenix had the ability to alter Ms. Philemond's employment relationship with Boca Lakes and Phoenix through Mr. Vito. Further, Mr. Vito controlled the means and manner for performance of her daily responsibilities, and used his authority to alter Ms. Philemond's working hours based on his employment with Phoenix. Therefore, I find

that Ms. Philemond has stated a claim upon which relief can be granted based on her employment relationship with Phoenix.

### B. *Negligent Hiring, Retention & Supervision*

#### 1. <u>Shotgun Pleading</u>

Phoenix states that Ms. Philemond's count for negligent hiring, retention, and supervision is a shotgun pleading. ECF No. 7 at 6-8. Phoenix says that "[n]egligent hiring and negligent retention/supervision are distinct causes of action with different elements" that should be pled separately. *Id.* at 6 (citation and quotation marks omitted). Ms. Philemond responds that this argument "elevates form over substance and ignores the clear factual allegations supporting each theory of negligence." ECF No. 8 at 6.

The Complaint commits *Weiland's* "sin of not separating into a different count each cause of action or claim for relief." 792 F.3d at 1323. Because different causes of action have different elements, they must be pled separately to avoid confusion. *NCL (Bahamas)*, 2016 U.S. Dist. LEXIS 150817, at *8-10 (explaining the elements of negligent hiring, retention, and supervision); *Doe v. Norwegian Cruise Lines, Ltd.*, 744 F. Supp. 3d 1300, 1310-11 (S.D. Fla. 2024) ("negligent retention [is a] distinct cause[] of action, requiring separate findings of fact and thus must be pled separately from a claim of negligent hiring and negligent supervision."); *Finch v. Carnival Corp.*, 701 F. Supp. 3d 1272, 1283-84 (S.D. Fla. 2023) (dismissing a count for combining negligent hiring, negligent retention, and negligent training because it was a shotgun pleading as they are "different causes of action with distinct elements requiring

19

separate findings"). Moreover, having each cause of action in a separate count clarifies the record for purposes of summary judgment and jury consideration.

Yet, Ms. Philemond says that *Finch* and *Doe v. Carnival Corporation* say that a complaint cannot be a shotgun pleading where the defendant "has demonstrated its understanding of the elements of . . . [the] claims against it." 701 F. Supp. 3d at 1282-83 (quoting *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1323 (S.D. Fla. June 26, 2020)). I acknowledge that these cases give the Court discretion to avoid the shotgun nature of a pleading where there is no prejudice. Here, Ms. Philemond is going to have to replead her claims against Boca Lakes, so it makes sense to have her replead the claims against Phoenix.

### 2.   Failure to State a Claim for Negligent Hiring or Negligent Supervision

In the alternative, Phoenix says that Ms. Philemond "fails to allege any facts that support her claim of negligent hiring." ECF No. 7 at 8. Specifically, the "Complaint contains no allegations that prior to the time Mr. Vito was hired, Phoenix knew of should have known that he was unfit for the position due to harmful propensities." *Id.* Ms. Philemond responds that she has adequately stated her claim because "Phoenix knew or should have known that Mr. Vito was unfit for the position of property manager and that he was known for harassing employees" regarding the negligent hiring claim. ECF No. 8 at 9. For the negligent supervision claim, Phoenix says that "not once in her thirty-two page Complaint does [Ms. Philemond] raise any allegations regarding the adequacy of any investigation Phoenix may have completed . . ." ECF No. 7 at 8. In response, Phoenix says that "the complaint further alleges a

20

pattern of behavior known within the workplace whereby Mr. Vito would hire cleaning staff and demand sexual favors from them." ECF No. 8 at 9.

For the negligent hiring claim, Ms. Philemond does not plead any circumstances surrounding Mr. Vito's hiring, nor does Ms. Philemond provide any facts to support a claim that Phoenix had any information to suggest that Mr. Vito should not have been hired. *Bonck v. Carnival Corp.*, No. 18-23991-CIV, 2019 WL 4866292, at *4 (S.D. Fla. June 25, 2019) ("Notably, negligent hiring occurs when 'prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness . . .'") (citation omitted), *report and recommendation adopted*, 2019 WL 4291346 (S.D. Fla. Sep. 11, 2019); *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1334-35 (S.D. Fla. 2019), *report and recommendation adopted*, 2019 WL 2254962 (S.D. Fla. 2019). Rather, in her Complaint, Ms. Philemond exclusively pleads facts surrounding Mr. Vito's actions *during* his employment. *See* ECF No. 1. At best, she makes conclusory allegations that are not entitled to the assumption of truth. *Id.* ¶142 ("Defendants failed to take reasonable care in hiring, retaining, or supervising Mr. Vito."). She has not plausibly alleged a negligent hiring claim. Phoenix's Motion to Dismiss the negligent hiring claim should be granted.

Even taking all inferences in the light most favorable to Ms. Philemond, the negligent supervision claim fails. First, it does not plausibly allege Phoenix had actual or constructive knowledge of Mr. Vito's actions. Ms. Philemond says that she told an unnamed contractor about her sexual encounters with Mr. Vito and that the contractor "informed [Ms. Philemond] that Mr. Vito would terminate her employment

21

if she reported the incidents to the police or others."[7] ECF No. 1 ¶50. Further, Mr. Vito had at least one employee perform sexual acts on him while on duty and on the premises. *See id.* ¶31. Finally, Mr. Vito solicited and performed these sexual acts in various locations across the Boca Lakes property, including in his office and the apartments. *Id.* ¶¶38, 45-46. But, Ms. Philemond does not show that Phoenix had any form of knowledge about Mr. Vito's actions. Rather, Ms. Philemond alleges only that one contractor—whose title and name are unknown—had a general knowledge about Mr. Vito's actions. This fact is not enough to plausibly state a claim for relief.

Therefore, I find that the Complaint fails to state a claim for negligent hiring and negligent supervision.

## C. Sexual Assault & Battery

Phoenix argues that Mr. Vito was "not acting within the scope of his employment" when he performed the alleged acts. ECF No. 7 at 13. Phoenix says that the sexual assault and battery are unrelated to Mr. Vito's duties as a property manager and were not carried out at Phoenix's direction nor motivated by a desire to serve Phoenix. *Id.* Ms. Philemond says that Mr. Vito used his supervisory position to

---

[7] Notably, Ms. Philemond says that "Phoenix Management was, at all times relevant, the property management company responsible for the day-to-day management of the Boca Lakes Condominium, including the management of employee and contractors who service the condominium." ECF No. 1. ¶17. Accordingly, it can be inferred that this contractor was overseen by Phoenix because he was present on the premises. This inference is supported by the contractor's knowledge about Mr. Vito and his actions. *Id.* ¶50.

further his harassment and that "[a]t a minimum" it is a factual issue to be left for the jury. ECF No. 8 at 11.

Here, Mr. Vito told Ms. Philemond that she would be subjected to adverse treatment, and later terminated, if she did not submit to his advances. ECF No. 1 ¶¶32, 39, 52, 53. When these threats did not have the intended result, Mr. Vito escalated to threats of physical violence. *Id.* ¶59. As well, Ms. Philemond says that Mr. Vito required her to ride with him in a golf cart to gain access to the apartments she would clean, which Mr. Vito had not previously required. *Id.* ¶¶39, 40. With this change, Ms. Philemond could not enter the premises she was tasked with cleaning without interacting with Mr. Vito. *See id.*

Thus, I find that Ms. Philemond has plausibly pled a factual question that should be left to the jury. Viewed in the light most favorable to Ms. Philemond, a fact finder could plausibly conclude that Mr. Vito used his supervisory role and the employment relationship in furtherance of committing the sexual assault and battery on Ms. Philemond. The Complaint states a claim for sexual assault and battery.

## VII.    ANALYSIS FOR BOCA LAKES

Ms. Philemond brings all claims against Boca Lakes. ECF No. 1.

Boca Lakes argues that the Complaint is a shotgun pleading because (1) it "improperly comingles both Defendants together in every count, and fails to specify, as required, factual details showing which Defendant is responsible for which specific acts or statements" and (2) it fails to separate the causes of action for negligent hiring, retention, and supervision. ECF No. 20 at 3. Ms. Philemond responds that (1) the

parties are distinguished in the Complaint, (2) where Phoenix and Boca Lakes are jointly referenced, the pleading applies to both parties, and (3) the argument relating to negligent hiring, supervision, and retention "elevates form over substance and ignores the clear factual allegations supporting each theory of negligence." ECF No. 26 at 6-7.

Here, the Complaint often specifies which Defendant is being referenced. *See* ECF No. 1. Yet, where the Complaint does not distinguish between Defendants, it could be interpreted to allege that both parties are responsible for the pled actions. *See e.g. id.* ¶5, 81 ("Plaintiff was a covered employee of Defendants within the meaning of the FCRA ad Title VII and worked for Defendants . . ." and "During her employment with Defendants . . .").

But, there are instances where it is unclear which Defendants' actions are at issue. For example, Ms. Philemond says that she "was injured and negatively affected by Defendant because of the discriminatory and hostile work environment." *Id.* ¶85, 123. Another example includes "As a direct and proximate result of Defendant's actions . . . damages against Defendants." *Id.* ¶87, 100, 105, 112, 125, 133, 138, 146, 152. As well, she pleads that "[a]t all times during [Ms. Philemond's] employment with Defendants, [Ms. Philemond] performed her job in a manner which should have met Defendant's reasonable expectation." *Id.* ¶90.

These last two examples create the most confusion because they reference a singular Defendant and the plural Defendants in the same sentence. This distinction implies that there was an intention to differentiate between the Defendants, but it is

unclear which Defendant Ms. Philemond is referencing. Thus, the Complaint is a shotgun pleading as it relates to Boca Lakes. Any amended pleading should make clear whether Ms. Philemond is asserting that one defendant's conduct should be imputed to another defendant, and should include sufficient facts to plausibly allege this imputation.

## VIII.  AMENDMENT

In both Responses to the Motions, Ms. Philemond requests leave to amend her Complaint should the pleading be found defective. ECF No. 8 at 9, 12; ECF No. 26 at 8, 16, 17. Typically, the proper manner to request leave to amend is to file a separate Motion and attach a proposed Amended Complaint.

But, because the Complaint is a shotgun pleading, I recommend that Ms. Philemond be permitted an opportunity to amend her Complaint without filing a separate motion for leave to amend.

## **REPORT AND RECOMMENDATION**

Accordingly, this Court **RECOMMENDS** that the District Court **GRANT** in part and **DENY** in part Phoenix's Motion and **GRANT** Boca Lakes' Motion, with leave to file an amended complaint.

## **NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Ed Artau, United States District Judge for the

Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 13th day of May 2026.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE